AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

OCT 1 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   '19 MJ4457 |
| Samsung Model: S9 IMEI: 354824090898482 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | *Offense Description* |
|---|---|---|
| 18 U.S.C. § 1324 | Alien Smuggling | |

The application is based on these facts:

See attached Affidavit of Agent Leonardo Contreras, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Leonardo Contreras, BPA-Intelligence
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/8/19

_____
*Judge's signature*

City and state:  San Diego, CA

Linda Lopez, Magistrate Judge
*Printed name and title*

**FILED**

OCT 1 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR A SEARCH OF:

Samsung
Model: S9
IMEI: 354824090898482

**'19 MJ4457**

**AFFIDAVIT OF LEONARDO
CONTRERAS IN SUPPORT OF
SEARCH WARRANT**

**AFFIDAVIT**

I, Leonardo Contreras, Border Patrol Agent-Intelligence with the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, having been duly sworn, depose and state as follows:

1. I make this affidavit in support of an application for a search warrant in furtherance of an alien smuggling investigation conducted by U.S. Border Patrol ("USBP") agents for the following target property: one cellular telephone seized on September 16, 2019 from Marcos ROMERO. The cellular telephone is (1) Samsung S9; IMEI: 354824090898482 ("**Target Telephone**"). Agents previously obtained a warrant for the **Target Telephone** on September 19, 2019. Agents executed the warrant, but were unsuccessful in downloading all of the information on the phone. Because that warrant had an end date of October 3, 2019, a new warrant is sought to allow agents to conduct another search and obtain a full download.

2. Agents seized the **Target Telephone** from ROMERO after apprehending under a federal arrest warrant. Agents believe that ROMERO used the **Target Telephone** to communicate with co-conspirators during an alien-smuggling event on August 29, 2019. ROMERO is being investigated for alien smuggling in violation of 8 U.S.C. § 1324 in the Southern District of California. Probable cause exists to believe

that the **Target Telephone** contains evidence relating to violations of 8 U.S.C. § 1324. The telephone is currently in the possession of the Customs and Border Protection Campo Border Patrol Station, 32355 Old Highway 80, Pine Valley, California 91962.

3.     Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the items to be searched as described in Attachment A (incorporated herein).  This item may be or lead to: (1) evidence of the existence of alien smuggling or conspiracy to smuggle aliens in violation of 8 U.S.C. § 1324; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as, a means of committing criminal offenses.

## EXPERIENCE AND TRAINING

4.     I am a USBP Agent-Intelligence within the United States Department of Homeland Security, Customs and Border Protection, USBP. I have been employed as a USBP Agent since 2007. I am presently assigned to the San Diego Sector Intelligence Unit at the Campo Border Patrol Station. I am a graduate of the USBP Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have received training, and have experience in, investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States. Prior to my appointment as a Border Patrol Agent-Intelligence, I was stationed at Imperial Beach Border Patrol Station, where I was assigned to the Targeted Enforcement Unit under the Imperial Beach Intelligence Unit.

5.     I conduct investigations of criminal violations relating to alien smuggling. I have participated in numerous alien-smuggling-related investigations, many of which involved arrests for alien-smuggling offenses. In those cases, I interviewed the arrested persons and their associates. Through these interviews, I have gained a working knowledge of and insight into the activities and operations of alien smugglers.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by using cell phones and portable radios to maintain communications with co-conspirators to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment using cell phones and portable radios. Conspiracies involving alien smuggling generate many types of evidence, including voicemail and text messages referring to travel and payment arrangements and names, photographs, and phone numbers of co-conspirators and aliens to be smuggled.

7.     In preparing this affidavit, I have conferred with other agents and law-enforcement personnel experienced in alien-smuggling investigations, and they share the opinions stated below. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8.     Based on my training and experience as a USBP Agent-Intelligence consultations with law-enforcement officers experienced in alien-smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Alien smugglers will use cell phones because they are mobile and have instant access to telephone calls and text, web, and voice messages.

b.     Alien smugglers will use cell phones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

c.     Alien smugglers and their accomplices will use cell phones because they can easily arrange and/or determine the time when the smuggled aliens will arrive at predetermined locations.

d.     Alien smugglers will use cell phones to direct drivers to synchronize a drop-off and/or pick-up time for the smuggled aliens.

**1**  e.  Alien smugglers will use cell phones to notify or warn their accomplices
**2** of law-enforcement activity, including the presence and location of marked and
**3** unmarked units, as well as the operational status of USBP checkpoints.

**4**  f.  Alien smugglers will use cell phones to make arrangements with the
**5** smuggled aliens prior to the smuggling event, and to arrange for payment after the
**6** smuggling event.

**7**  g.  Alien smugglers will use GPS devises in remote areas to guide them to the
**8** location of the aliens to be smuggled, as well as to the final destination of the smuggled
**9** aliens.

**10**  ## FACTS SUPPORTING PROBABLE CAUSE

**11**  9.  On September 15, 2019 at 4:55 p.m., at the Campo Border Patrol Station
**12** located in Pine Valley, California, Marcos ROMERO provided a videotaped statement
**13** to Border Patrol Agents-Intelligence Benjamin Moretti and Daniel Scott. The interview
**14** is summarized below.

**15**  10.  At 4:56 p.m., ROMERO was advised of his Miranda rights. ROMERO
**16** stated that he understood his rights and was willing to answer questions without a
**17** lawyer present.

**18**  11.  ROMERO stated that he recruits drivers for alien-smuggling events in east
**19** San Diego County. He has friends who send him names and numbers of drivers. Once
**20** ROMERO has the name, phone number, license picture, and vehicle picture of a
**21** prospective driver, he sends the information from the **Target Telephone** to an
**22** individual in Mexico who goes by the moniker "Cebolla." Agents know that "Cebolla"
**23** is Cristian HIRALES, a documented alien smuggler operating in east San Diego
**24** County. ROMERO stated that he primarily communicates with HIRALES via "Whats
**25** App" on the **Target Telephone** and has only met him once two years ago. ROMERO
**26** was unable to identify HIRALES in a six-pack photographic line-up.

**27**  12.  ROMERO stated that a friend named "Frank" introduced him to alien
**28** smuggling and HIRALES. Agents are familiar with "Frank" and showed ROMERO a

4

six-pack photographic line-up containing Cesar URIBE. ROMERO identified URIBE as "Frank." ROMERO stated that he has known URIBE for roughly four years. ROMERO also stated that URIBE has a brother named Marlon URIBE who works with him. ROMERO identified Marlon URIBE in a six-pack photographic line-up.

13.     ROMERO described the organization of the smuggling crew he works for. He stated that HIRALES is in charge of everything from Mexico. ROMERO stated HIRALES makes all the arrangements with the illegal aliens to be smuggled to the U.S. in Mexico. Cesar URIBE is directly beneath HIRALES and is in charge of everything in the U.S. HIRALES negotiates the smuggling arrangements with the aliens and then sends them over the border by foot, where they are phone guided to a location near a road. Recruiters then send driver information to ROMERO or individuals at his same level and ROMERO sends the driver information to HIRALES from the **Target Telephone**. ROMERO guides the drivers to the general location where the aliens are waiting using the Target Telephone. Once the drivers are in the area, HIRALES contacts the drivers and guides them to the aliens' exact location. Once the drivers pick up the aliens, they are guided to the Los Angeles area, where ROMERO or people in his same level drive the aliens to a hotel and hold them until sponsors come to pay the smuggling fees and take the aliens.

14.     ROMERO stated that he went with Sergio SANTINAVEZ to a buyout at the Sandpiper Hotel in Costa Mesa, California on August 29, 2019. (Agents observed the entire buyout by following ROMERO using a GPS tracker.) ROMERO went with SANTIVANEZ because SANTIVANEZ needed a ride and offered ROMERO $400. ROMERO and SANTIVANEZ kept four aliens in the hotel room during the buyout. A driver in east San Diego County picked up the aliens and dropped them off with ROMERO and SANTIVANEZ at the Sandpiper Hotel. ROMERO rented the hotel room, and URIBE provided the money for the room and food for the aliens. Agents observed ROMERO and SANTIVANEZ oversee two separate buyouts from the hotel room. Agents arrested all four aliens and five sponsors after the buyouts. ROMERO

**1** confessed to all of this. He stated that they then took the smuggling proceeds from this
**2** event back to URIBE at 1044 Ardilla Place.

**3**      15.    ROMERO also admitted to recruiting an individual named Yusuf
**4** Mohamad ALI and sending him to smuggle aliens using the **Target Telephone** on July
**5** 16, 2019 for HIRALES. Agents arrested ALI during the smuggling. ROMERO granted
**6** agents signed consent to search the **Target Telephone**, and that search confirmed his
**7** account. The **Target Telephone**'s "What's App" had a significant number of messages
**8** pertaining to alien smuggling. ROMERO had several numbers for HIRALES (664-346-
**9** 0756, 665-142-0179, 665-142-0963, and 665-121-8115). ROMERO identified two
**10** numbers for Cesar URIBE (619-653-3926 and 619-389-6246). All of the messages in
**11** the **Target Telephone** associated with those numbers implicate HIRALES and URIBE
**12** in alien-smuggling activities and corroborate ROMERO's account. ROMERO admitted
**13** to knowing that the people he was smuggling were illegal aliens, to knowing that
**14** smuggling illegal aliens is illegal, and to using the **Target Telephone** to communicate
**15** while coordinating all the smuggling events.

**16**      16.    Based on my experience and training, consultation with other law
**17** enforcement officers experienced in alien-smuggling investigations, and all of the facts
**18** and opinions set forth in this affidavit, I believe that information relevant to the alien-
**19** smuggling activities of ROMERO and his co-conspirators, such as telephone numbers,
**20** made and received calls, contact names, email addresses, appointment dates, messages,
**21** pictures, and other digital information are stored in the memory of the cell phone
**22** described herein.

**23**                    **SEARCH PROTOCOL**

**24**      17.    It is not possible to determine, merely by knowing the cellular telephone's
**25** make, model and serial number, the nature and types of services to which the device is
**26** subscribed and the nature of the data stored on the device. Cellular devices today can
**27** be simple cell phones and text message devices; can include cameras; can serve as
**28** personal digital assistants and have functions such as calendars and full address books;

1   and can be mini-computers allowing for email services, web services, and rudimentary
2   word processing. An increasing number of cell service providers now allow their
3   subscribers to access their device over the internet and remotely destroy all of the data
4   contained on the device. For that reason, the device may only be powered in a secure
5   environment or, if possible, started in "flight mode," which disables access to the
6   network. Unlike typical computers, many cell phones do not have hard drives or hard-
7   drive equivalents and store information in volatile memory within the device or in
8   memory cards inserted into the device. Current technology provides some solutions for
9   acquiring some of the data stored in some cellular telephone models using forensic
10   hardware and software. Even if some of the stored information on the device may be
11   acquired forensically, not all of the data subject to seizure may be so acquired. For
12   devices that are not subject to forensic data acquisition or that have potentially relevant
13   data stored that is not subject to such acquisition, the examiner must inspect the device
14   manually and record the process and the results using digital photography. This process
15   is time and labor intensive and may take weeks or longer.

16       18.   Following the issuance of this warrant, I will collect the subject cell phone
17   and analyze it. All forensic analysis of the data contained within the phone and its
18   memory cards will employ search protocols directed exclusively to the identification
19   and extraction of data within the scope of this warrant.

20       19.   Based on the foregoing, identifying and extracting data subject to seizure
21   pursuant to this warrant may require a range of data analysis techniques, including
22   manual review, and, consequently, may take weeks or months. The personnel
23   conducting the identification and extraction of data will complete the analysis within
24   ninety (90) days, absent further application to this court.

25       20.   Following the issuance of this warrant, I will collect the subject cell phone
26   and, with assistance if necessary from cell-phone forensic examiners, will attempt to
27   securely power the devices, identify whether they are protected by a personal
28   identification number (PIN), determine or circumvent the PIN, and image or retrieve

1  data subject to seizure pursuant to this warrant from the device.  The search of the
2  devices or of an image on the data on the device will be limited to identifying and
3  seizing data subject to seizure pursuant to this warrant and, in any event, will be limited
4  to only the information to be found on basic cell phones: digital, cellular, and/or
5  telephone numbers and/or direct connect numbers assigned to the device; call and direct
6  connect history information; lists of contacts stored on the device; text messages stored
7  on the device; and, if equipped as a camera, photographs and videos stored on the
8  device. In the event that I or other personnel lawfully conducting the analysis identify
9  information pertaining to crimes outside the scope of the warrant, such information will
10  not be used in any way unless a new warrant is obtained to search for such information.

11      21.    I, or any other duly authorized federal agent, will personally serve the
12  warrant requested above, and will be assisted by other duly authorized federal
13  investigators.

14                                    **CONCLUSION**

15      22.    Based on all of the facts and circumstances described above, I believe that
16  probable cause exists to conclude that ROMERO used the **Target Telephone** to
17  facilitate alien smuggling. The **Target Telephone** was likely used to facilitate the
18  offenses by transmitting and storing data, which constitutes evidence, fruits, and
19  instrumentalities of violations of 8 U.S.C. § 1324.

20      23.    I also believe that probable cause exists to indicate that evidence, fruits,
21  and instrumentalities of illegal activity committed by ROMERO continues to exist on
22  the **Target Telephone.**

23      24.    Based upon my experience and training, consultation with other agents in
24  alien-smuggling investigations, consultation with other sources of information, and the
25  facts set forth herein, I know that the items to be seized set forth in Attachment B
26  (incorporated herein) are likely to be found in the property to be searched described in
27  Attachment A (incorporated herein). Therefore, I respectfully request that the Court
28  issue a warrant authorizing me, a USBP Agent, or another federal law enforcement

                                        8

1  agent specially trained in digital evidence recovery, to search the item described in

2  Attachment A and seize the items listed in Attachment B.

3      25.    I swear the foregoing is true and correct to the best of my knowledge and

4  belief.

Leonardo Contreras
Border Patrol Agent-Intelligence
U.S. Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS ____ DAY OF
OCTOBER, 2019.

HONORABLE LINDA LOPEZ
United States Magistrate Judge

9

## ATTACHMENT A

The following item ("**Target Telephone**") is to be searched:

Samsung
Model: S9
IMEI: 354824090898482

This item is currently in the possession of the Customs and Border Protection Campo Border Patrol Station, 32355 Old Highway 80, Pine Valley, CA 91962.

## ATTACHMENT B

## ITEM TO BE SEIZED

Authorization to search the **Target Telephone** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the **Target Telephone** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 16, 2019 to September 16, 2019:

a.     tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

b.     tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in the efforts to smuggle aliens into the United States from Mexico or transport illegal aliens within the United States;

d.     tending to identify travel to or presence at locations involved in the smuggling of aliens into the United States from Mexico or transporting illegal aliens within the United States such as drop off and pick up locations, stash houses, load houses, or delivery points;

e.     tending to indicate payment for the smuggling of aliens into the United States or the transportation of aliens with in the United States;

f.     tending to identify the user of, or persons with control over or access to, the **Target Telephone**; or

g.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, record, or data above.

**which are evidence of violations of 8 U.S.C. § 1324 (Alien Smuggling).**